IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JOHN SULLIVAN | : | |
| | : | |
| v. | : | CIVIL NO. L-05-2083 |
| | : | |
| THE WASHINGTON SAVINGS BANK, et al. | : | |
| | : | |

**MEMORANDUM**

Now pending is Defendants' Motion to Dismiss. (Docket No. 4). For the following reasons, the Court will, by separate Order, GRANT the Motion.

**I.     Introduction**

On April 8, 2005, John Sullivan was released from his position as Director of Lending at The Washington Savings Bank (TWSB). While he was employed at TWSB, Sullivan was granted options to purchase TWSB stock. The terms were laid out in eight separate options agreements. Each of the agreements contained a clause restricting Sullivan's exercise of the options if he were to be terminated "for cause."

In March 2004, TWSB came under scrutiny by the Office of Thrift Supervision (OTS) for failing to comply with bank lending and secrecy regulations. Sullivan alleges that he was fired as a scapegoat to demonstrate that TWSB was actively addressing the problem. Defendants argue that Sullivan's termination was "for cause" because he led the lending practice that came under OTS scrutiny and he engaged in insider trading.

After Sullivan was fired, he made a demand to exercise his stock options. TWSB denied the demand because it claimed that Sullivan was fired "for cause." Sullivan has brought this action against TWBS, Director Stephen J. Troese, and Chief Financial Officer Randy Robey.

Defendants have moved to dismiss the Complaint because the dispute is governed by a

binding arbitration agreement, which was signed by Sullivan and TWSB.[1]  While Sullivan agrees that the arbitration agreement governs his claims against TWSB, he argues that the Court should not dismiss the claims against Troese and Robey because they did not sign the agreement.

The Court rejects Sullivan's argument.  Officers and directors may invoke a corporation's arbitration clause under an agency theory.[2]  Moreover, Sullivan's claims against Troese and Robey are so inextricably intertwined with his claims against TWSB that Sullivan cannot effectively reach an arbitration agreement with TWSB while excluding Troese and Robey.[3]  Accordingly, the Court will grant Defendants' Motion to Dismiss.

## II.    Factual Background

From October 1990 until April 8, 2005, Sullivan was an employee of TWSB, with his last position as Director of Lending.  (Cmplt, ¶ 5; Mot. to Dismiss, p. 3).  Over the course of his employment, TWSB rewarded Sullivan on eight occasions by granting him options to purchase shares of TWSB.  (Cmplt, ¶ 11).  The eight separate options agreements permitted Sullivan to purchase a total of 32,500 shares with the first option date occurring in 2000.  (Cmplt, ¶¶ 21, 24).  Each of the options agreements included a clause that prevented Sullivan from exercising the options if he were terminated "for cause."[4]  (Mot. to Dismiss, p. 4).

---

[1]   Alternatively, Defendants argue that Counts 1, 3, 4, 6, 7, 8, 9, 10, and 11 should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  As the Court finds that the arbitration clause is binding on all Counts, it will not address Defendants' Rule 12(b)(6) arguments.

[2]   See General Electric Capital Corp. v. Union Corp Financial Group Inc., 142 Fed. Appx. 150, 152 (4th Cir. 2005)

[3]   See Brantley v. Republic Mortgage Ins. Co., 424 F.3d 392, 396 (4th Cir. 2005)

[4]   Each of the Options Agreements defined "for cause" as "gross negligence or willful misconduct in connection with the performance of duties."  (Cmplt, ¶ 90).

Sullivan was fired on April 8, 2005.  TWSB argues that Sullivan was fired "for cause" because: (i) TWSB's lending practices came under examination by the OTS while Sullivan was serving as Director of Lending; (ii) Sullivan approved loans that were subject to disapproval by the OTS; and (iii) he sold TWSB stock during a blackout period when he was privy to insider information about the OTS investigation.  (Mot. to Dismiss, p. 3-4).

Sullivan disputes that his release was "for cause."  He claims that he was randomly terminated to demonstrate that the Bank was taking the OTS investigation seriously.  (Cmplt, ¶¶ 50-51).  Sullivan did not exercise his options before he was fired because, in February 2005 and on March 25, 2005, the President of TWSB reassured Sullivan that he would not be the one who was fired.  (Cmplt, ¶¶ 59 and 72).  Moreover, on February 17, 2005, Defendant Randy Robey informed Sullivan that he could not exercise his options because Sullivan had insider information about the OTS investigation.  (Cmplt, ¶ 63).  Robey stated that the blackout period would only last 30 days, but the restraint was not lifted until after Sullivan's termination on April 8, 2005.  (Cmplt, ¶¶ 64, 67).  On July 1, 2005, Sullivan made a demand to exercise all of his stock options.  (Cmplt, ¶ 102).  The next day, July 2nd, TWSB rejected Sullivan's demand. (Cmplt, ¶ 131).

The terms and conditions of Sullivan's employment are set forth in TWSB's employee manual.  (Mot. to Dismiss, p. 5).  Contained in the manual is a "Dispute Resolution Agreement" that both Sullivan and TWSB signed on November 27, 2001.  The Dispute Resolution Agreement provides that "any and all disputes between the parties shall be resolved exclusively by the Complaint Resolution Procedures of the Bank's Employee Policy Manual ("Handbook") and, if such disputes cannot be resolved internally and involves a claim for money damages, by

binding arbitration...."

On July 29, 2005, Sullivan filed an eleven count Complaint against TWSB, Troese, and Robey.[5]  (Docket No. 1).  Four of the counts are against TWSB alone:

    (i)       Count 1 - Injunction

    (ii)      Count 2 - Breach of Contract

    (iii)     Count 3 - Conversion

    (iv)     Count 8 - Detrimental Reliance

Five of the counts are against TWSB, Troese, and Robey together:

    (i)       Count 4 - Unjust Enrichment

    (ii)      Count 5 - Declaratory Judgment

    (iii)     Count 7 - Fraud

    (iv)     Count 9 - Violation of Federal Securities Law

    (v)      Count 11 - RICO

Count 6, Tortious Interference with Advantageous Relationships, is against Troese alone, and Count 10, Violation of State Securities Law, is against TWSB and Robey.

**III.   Analysis**

Defendants seek to dismiss Sullivan's Complaint in its entirety because the claims are subject to a binding arbitration agreement.  Sullivan concedes that his claims against TWSB are subject to arbitration, and he voluntarily dismisses Counts 9 through 11.  (Opp. to Mot. to Dismiss, p. 1, 2, 3-4).  Sullivan argues only that the Court should not dismiss the claims against

---

      [5]     Sullivan originally named the OTS as a Defendant, but he voluntarily dismissed it on November 28, 2005.  (Docket No. 8).

Troese and Robey (Counts 4, 5, 6, and 7) because they are non-signatories to the arbitration agreement. (Opp. to Mot. to Dismiss, p. 10).

The Fourth Circuit has stated that "[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties."[6]  Troese and Robey can enforce the arbitration agreement under two common law theories.

First, officers and directors are afforded the protection of a corporation's arbitration clause because they are agents of the corporate defendant.[7] As this Court has recognized, allowing officers and directors to invoke an arbitration agreement under an agency theory "prevents Plaintiff[s] from circumventing arbitration by suing an individual defendant."[8]

Second, non-signatories can compel arbitration when the claims against them are "inextricably intertwined" with the claims against the corporation.[9] Sullivan's claims against

---

[6] International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416-17 (4th Cir. 2000). In Thomson-CSF, S.A. v American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995), the Second Circuit recognized five common law theories that could provide a basis for allowing a non-signatory to enforce an arbitration agreement: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel.

[7] See General Electric Capital Corp. 142 Fed. Appx. at 152; Collie v. Wehr Dissolution Corp., 345 F. Supp. 2d 555, 562 (M.D.N.C. 2004) ("While the individual defendants did not sign the Agreement between the Plaintiff and National Hearing Centers, Inc., their status as agents of the Corporate Defendant enables them to use the Agreement to compel arbitration."); see also Davidson, D.D.S. v. Becker, D.D.S., 256 F. Supp. 2d 377, 383 (D. Md. 2003) ("the agent can assume the protection of the contract which the principal has signed"); Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1360 (2d Cir. 1993) ("Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement.").

[8] Davidson, 256 F. Supp. 2d at 383.

[9] Long v. Silver, 248 F.3d 309, 321 (4th Cir. 2001).

5

Troese, Robey, and TWSB are inextricably intertwined because each of the claims derives from Sullivan's employment at TWSB, the circumstances of his termination, and the benefits Defendants received from Sullivan's inability to exercise his stock options.[10] If Sullivan were to arbitrate his claims against TWSB but not Troese and Robey, "the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."[11]

**IV.   Conclusion**

Accordingly, the Court will, by separate Order, GRANT Defendants' Motion to Dismiss and CLOSE the case. (Docket No. 4).

Dated this 28th day of June, 2006.

```
                            _____/s/_____
                            Benson Everett Legg
                            Chief Judge
```

---

[10] The Court has no trouble finding that the facts are intertwined when Sullivan himself, as part of his RICO claim, argues that TWSB, Troese, and Robey acted together in a "scheme to defraud" and as a "civil conspiracy." (Cmplt, ¶¶ 192, 203).

[11] See Brantley, 424 F.3d at 396 (citing MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir. 1999)).